## Wolf *et al. versus* Payne.

A sheriff's sale of land under a *fieri facias*, with a waiver of inquisition by the defendant, who has previously parted with his interest in the premises levied on, subject to the lien of the judgment, will confer no title on the purchaser.

A previous levy and condemnation under a writ against a stranger to the defendant's title, will not cure the irregularity in such a sheriff's sale.

One claiming adversely to the title levied on and sold by the sheriff, cannot be compelled to become a party to an issue to determine the right to the proceeds of sale. The title of such party can only be tried by an action of ejectment.

ERROR to the Common Pleas of *Bucks county.*

This was an ejectment by Mary Jane Payne against Frederick Wolf, for a tavern property and three contiguous tracts of land in Richland township, containing 54 acres 114 perches. The landlord, T. H. Wilson, treasurer of the Central Insurance Company, who claimed title to the premises, as a purchaser at sheriff's sale, was subsequently admitted as a defendant on the record.

In 1849, Frederick Wolf was the owner of the premises in dispute. On the 6th April 1854, Wolf confessed a judgment in favour of John Kepler for $1000; and on the 7th April 1856, he confessed another judgment in favour of Joel W. Strawn for $1200; which became liens on the property in question.

On the 19th May 1857, Wolf conveyed the premises to Samuel B. Gingrich; and on the 25th of the same month, Gingrich conveyed the same to the plaintiff, who was the daughter of William Payne.

On the 24th January 1857, the Central Insurance Company obtained a judgment, in the District Court of Philadelphia, against Edward Payne, William Payne, and John Stanton, trading as E. Payne & Co., for $4071.35; and on the 13th July 1857, a *testatum fi. fa.* was issued on this judgment, to Bucks county, by virtue of which the premises in question were levied on and condemned.

On the 5th November 1857, a *fieri facias* was issued on the judgment in favour of John Kepler against Frederick Wolf, which was levied on the premises; and on the same day, Wolf signed a waiver of inquisition, and agreement that the property levied on might be sold under the *fieri facias.* The property was accordingly sold under this writ, and purchased by T. H. Wilson, treasurer of the Central Insurance Company, for $4800; to whom a deed was executed by the sheriff, on the 16th December 1857.

After satisfying the two judgments of John Kepler and Joel W. Strawn, the balance of the proceeds of sale, amounting to $2386.76, was paid into court for distribution. And on the application of T. H. Wilson, treasurer of the Central Insurance Company, the court directed an issue to try the question whether or not the real estate from the sale of which the fund in court arose, was purchased and paid for by William Payne, and the title made to Mary Jane Payne, to defraud creditors; and ordered that the Central Insurance Company should be plaintiff in the issue, and William Payne and Mary Jane Payne, the defendants.

The defendants declined taking part in this issue, and upon the trial they were not represented: whereupon a verdict was rendered for the plaintiff, and the court decreed the fund in court to the Central Insurance Company, on its judgment against E. Payne & Co.

Frederick Wolf leased the premises from the purchaser at the sheriff's sale; and Mary Jane Payne brought this ejectment against him to recover the possession.

On the trial, the plaintiff having proved her paper title, the defendant offered in evidence the records and proceedings by which they claimed to derive title under the sheriff's sale; but the court below ruled out the evidence, and sealed a bill of exceptions. And a verdict and judgment having been rendered for the

[Wolf *et al. v.* Payne.]

plaintiff, the defendants sued out this writ, and here assigned the same for error.

*Lear*, for the plaintiffs in error.—When land has been condemned on one *fi. fa.*, any other judgment-creditor may take out execution, and sell, without its being again condemned: McCormick *v.* Meason, 1 *S. & R.* 92; Wray *v.* Miller, 8 *Harris* 111.

But the purchaser's title was aided by the appropriation of the proceeds of sale to the payment of undisputed liens upon the land: Spragg *v.* Shriver, 1 *Casey* 282, and cases there cited.

*Du Bois*, for the defendant in error.—A levy and sale without inquisition, or a waiver of it, by the owner of the land, is absolutely void, and conveys no title to the purchaser: Baird *v.* Lent, 8 *Watts* 423; Shoemaker *v.* Ballard, 3 *Harris* 94; McLaughlin *v.* Shields, 2 *Jones* 290; Wray *v.* Miller, 8 *Harris* 115; McFee *v.* Harris, 1 *Casey* 105; Soles *v.* Hickman, 5 *Id.* 342; Sample *v.* Barr, 1 *Id.* 459. Mary Jane Payne was no party to the issue; she received none of the proceeds of sale, and claimed none; and her title could not thus be tried.

The opinion of the court was delivered by

Lowrie, C. J.—Mary Jane Payne had the legal title to this land, subject to some judgments against a former owner. Then a *fi. fa.* was issued on one of these judgments, and the former owner waived inquisition and condemnation, and allowed a sale on that writ. Of course, this could not affect the then owner's title; she alone could waive her right to have inquisition. Was there anything to cure this irregularity? It is supposed to be cured by a former condemnation in another suit; but that was a proceeding against William Payne. The levy and condemnation were of his interest, not Mary's; and that could not possibly cure the defect in the proceeding against Mary's title.

The sale went on the hypothesis that Mary's title was a fraud on the creditors of William. On the distribution, an issue was ordered to try this question, and Mary was made a party to it. But she was claiming nothing out of the sale, and refused to be a party. This was right, for she could not claim the proceeds without some kind of admission that her title was sold. And she could not be compelled to try her title in such a proceeding. That was to be tried by an action of ejectment. There was nothing in the offers of evidence that tended to cure the defects in the title of the defendant below, or divest the title of the plaintiff, and the verdict was rightly rendered for the plaintiff. No evidence was offered to show any fraud in Mary's title.

Judgment affirmed.